U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2018 MAR 30 PM 3: 47

CLERK

BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

UNITED STATES OF AMERICA )
)
v. ) Case Nos. 2:1-cr-34, 2:2-cr-40
)
RONALD FOLEY )

## OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION FOR A RULING ON THE MERITS, DENYING AS MOOT THE GOVERNMENT'S MOTION TO STAY THE CASE, AND DISMISSING AS UNTIMELY DEFENDANT'S 28 U.S.C. § 2255 PETITION
(Docs. 51, 53, & 57)

This matter came before the court on Defendant Ronald Foley's petition to vacate and correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 51), the government's motion to stay the case (Doc. 53), and Defendant's motion for a ruling on the merits (Doc. 57). On October 5, 2017, Defendant filed his second set of supplemental documents in support of his § 2255 petition, at which time the court took the matter under advisement.

Defendant argues that his sentence was enhanced pursuant to the residual clause of the then-mandatory United States Sentencing Guidelines (the "U.S.S.G." or the "Guidelines") and thereby violates his right to due process pursuant to *Johnson v. United States*, 135 S. Ct. 2551 (2015) and *Welch v. United States*, 136 S. Ct. 1257 (2016). *Johnson* held that the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1), was void for vagueness under the Due Process Clause. *Welch* made the *Johnson* rule retroactive to cases on collateral review. Defendant asserts that his prior convictions do not qualify as crimes of violence under either the enumerated offenses clause or the force clause of § 4B1.2(a) of the Guidelines. Because the ACCA's residual clause has been ruled unconstitutionally vague, he contends there is no basis on which he qualifies for status as a career offender. Defendant further argues that his claim is not barred by *Beckles v. United States*, 137 S. Ct. 886 (2017), wherein the Supreme Court

held that the residual clause of § 4B1.2 of the advisory Guidelines is not void for vagueness. Defendant distinguishes the procedural posture of his case, arguing that his January 9, 2003 sentencing occurred when the Guidelines were mandatory and prior to the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), and as such "the [c]ourt had no choice but to impose the [mandatory] career offender sentence." (Doc. 57 at 14.)

The government's opposition to Defendant's § 2255 petition is twofold. First, the government argues that Defendant is not entitled to relief because his claim is premature. Second, the government contends that this court properly determined that Defendant had previously been convicted of multiple crimes of violence (six convictions in Connecticut for first degree robbery) and thus qualified as a career offender.

Defendant is represented by Assistant Federal Public Defender Barclay T. Johnson. The government is represented by Assistant United States Attorney Gregory L. Waples and Assistant United States Attorney Melissa A. D. Ranaldo.

## I.     Factual and Procedural Background.

On January 9, 2003, this court sentenced Defendant to a combined term of 262 months imprisonment, consisting of the statutory maximum term of 240 months imprisonment following his guilty plea to one count of bank robbery, and a consecutive term of 22 months imprisonment following his guilty plea to one count of escape. The court adopted the presentence report ("PSR") as its findings of fact and noted that Defendant had a prior third degree burglary conviction for breaking and entering into a private residence in Connecticut and stealing property contained therein, as well as multiple convictions for first degree robbery in Connecticut. The court declined to consolidate Defendant's robbery convictions into one offense and, as a result, concluded that the Guidelines' career offender enhancement was applicable.[1]

---

[1] Defendant objected to the PSR's conclusion that he qualified as a career offender and argued that his multiple 1991 convictions for robbery constituted one offense because his arrest date was the same for all of those offenses, he cooperated with authorities on all of them, and he was sentenced at the same time. At sentencing before this court, Defendant conceded that the Connecticut court imposed consecutive sentences for each offense and did not issue a formal

2

"As a general matter, reliance on a federal PSR's factual description of a defendant's pre-arrest conduct to determine whether a prior offense constitutes a 'crime of violence' under U.S.S.G. § 4B1.2(a)(1) is prohibited." *United States v. Reyes*, 691 F.3d 453, 459 (2d Cir. 2012). In this case, the court does not rely on the PSR's description of Defendant's pre-arrest conduct to determine whether his prior convictions constituted "crimes of violence" but merely for the purposes of determining whether "there exists a close factual relationship between the underlying convictions." *United States v. Mapp*, 170 F.3d 328, 338 (2d Cir. 1999) (internal quotation marks omitted).

On or about January 16, 1991, Defendant was arrested for robbery in Connecticut and implicated himself in thirteen robberies and one burglary in the Hartford, Connecticut area. Paragraph 115 of the PSR states that Defendant entered a Glastonbury, Connecticut department store, handed a note to the cashier that stated he had a gun, and demanded the cashier hand over the money in the cash register. When the cashier refused to immediately comply, Defendant grabbed the money from the cash drawer and fled.

In Paragraph 116 of the PSR, a police report also dated January 16, 1991 indicated that Defendant entered a West Hartford, Connecticut gas station, proffered a note stating he possessed a gun, and demanded money. The employee placed money in the cash register drawer which Defendant took before leaving.

As detailed in PSR Paragraph 117, on or about January 14, 1991, Defendant entered an Enfield, Connecticut flower shop and presented a note stating he had a gun and demanded money. The clerk began removing money from the cash register when

---

order of consolidation, thereby rendering his argument contrary to Second Circuit precedent. *See United States v. Mapp*, 170 F.3d 328, 338 (2d Cir. 1999) (concluding convictions "have been functionally consolidated only where 'there exists a close factual relationship between the underlying convictions.'"). In addition, it is undisputed that the offenses in question were committed in different locations, with different participants, with different victims, and over the course of several days. *See id.* at 338-39 (holding convictions were not "consolidated (functionally or otherwise) for sentencing simply because a defendant received concurrent sentences that were imposed on the same day" where defendant's convictions for "two robberies occurred at separate locations and involved separate participants and separate victims" and therefore "there was not a close factual relationship between the offenses underlying [defendant's] prior convictions").

Defendant reached over the counter and grabbed money from her hands and the open register cash drawer.

According to Paragraph 118 of the PSR, Defendant entered a woman's clothing store in Southington, Connecticut on January 14, 1991. With his hand in his right jacket pocket, Defendant handed an employee a written note that stated he had a gun and demanded money. The employee handed Defendant the money from the cash register.

On or about January 11, 1991, Defendant entered a pharmacy in Hartford, Connecticut. According to Paragraph 120 of the PSR, Defendant handed a pharmacist a note that stated he had a gun and demanded money. The pharmacist opened the cash register, and Defendant removed the ten and twenty dollar bills before he fled the store.

The PSR noted in Paragraph 121 that on January 12, 1991, Defendant entered a store in Hartford, Connecticut. Upon observing the number of people inside the store, Defendant temporarily left until some of the customers departed. He then reentered the store, approached a cash register, and ordered the employee to open the cash register. When the employee did not immediately do so, Defendant brandished a small silver handgun and repeated his order to open the cash register. While the clerk was collecting the money, Defendant reached over and grabbed money.

The PSR described the events underlying Defendant's burglary conviction in Paragraph 119.[2] On or about January 2, 1991, Defendant and another man entered a private residence without permission and stole a handgun and a floor safe containing a large, rare, and valuable collection of gold and silver coins. Defendant confessed to the burglary on January 16, 1991. The PSR did not indicate the time of day the burglary took place, whether anyone was present in the residence at the time, or Defendant's method of entry.

---

[2] Defendant objected to Paragraph 119 of the PSR and contended that he broke into an antique business rather than a private residence. The Addendum to the PSR provides support for the conclusion that Defendant entered a private residence, as alleged in Paragraph 119, based on a presentence report completed by the Connecticut Office of Adult Probation which contained the same allegation.

4

The PSR recommended that the court find that Defendant was a career offender as defined in Guidelines § 4B1.1. In support of that recommendation, the PSR noted that Defendant was at least eighteen years of age at the time of the Vermont bank robbery offense, that the bank robbery was a felony that was a crime of violence, and that Defendant had at least two prior felony convictions for crimes of violence. *See* PSR at 15, ¶ 94a. Citing Guidelines § 4A1.2 n.3 and the Second Circuit's analysis in *Mapp*, the PSR recounted that Defendant was sentenced in Connecticut on May 20, 1993 for thirteen robbery offenses and burglary, as described in Paragraphs 115-121 of the PSR, and concluded:

> the [Connecticut] robberies in question cannot be considered related . . . because the robberies occurred on different days and involved different locations, and victims. Based on the foregoing, the convictions outlined in [P]aragraphs 115 through 121 are thus unrelated and qualify as predicate offenses for the career offender application.

PSR at 15, ¶ 94a n.1. In making the Guidelines calculations, the court concluded that Defendant committed the offenses of conviction subsequent to sustaining six felony convictions for first degree robbery and one conviction for burglary and therefore qualified as a career offender. *See* PSR at 21-24, ¶¶ 115-18, 120-21.

Based on controlling Second Circuit precedent, in determining Defendant's Guidelines range, the court adopted the PSR's recommendation, found that the offense of bank robbery occurred on or about March 22, 2001, the offense of escape occurred on March 24, 2002, and that the Sentencing Guidelines applied. The court further found that certain offense characteristics applied and increased Defendant's offense level, including that: (1) the property of a financial institution was taken; (2) Defendant obstructed justice; (3) Defendant used force against another person during the commission of his escape; (4) the victim of the escape offense was a government officer; (5) Defendant physically restrained the victim of the escape offense; (6) Defendant recklessly created a substantial risk of death or serious bodily injury to another in the course of fleeing from a law enforcement officer; and (7) Defendant did not demonstrate an acceptance of responsibility.

5

After reviewing the nature of the offenses, the court determined that Defendant's combined offense level was 32 and that he had 36 criminal history points, resulting in criminal history category VI.[3] The statutory maximum was 20 years imprisonment for the bank robbery conviction, and Defendant's Guidelines imprisonment range was 210 to 262 months.[4] The court denied the government's request for an upward departure, and sentenced Defendant to a term of imprisonment of 240 months for bank robbery consecutive to a term of imprisonment of 22 months for the escape offense, for a total sentence of 262 months imprisonment followed by a three year term of supervised release.

On appeal, the Second Circuit affirmed Defendant's sentence. In rejecting his argument that the court erred in denying him an adjustment for acceptance of responsibility, the Second Circuit held that the "district court's imposition of [the]

---

[3] Under the 2002 Guidelines, a defendant's base offense level was 20 if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense[.]" U.S.S.G. § 2K2.1(a)(4)(A). Section 4B1.1(a) provided that:

[a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). The term "crime of violence" was defined in the 2002 Guidelines as:

any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). "Section 4B1.2(a)(1) is referred to as the 'physical force clause.' The first half of § 4B1.2(a)(2) contains the 'exemplar crimes,' and the second half the 'residual clause.'" *United States v. Van Mead*, 773 F.3d 429, 432 (2d Cir. 2014).

[4] Defendant notes that, without the career offender enhancement, his total offense level was 19 and his criminal history category was VI, resulting in a Guidelines range of 63-78 months imprisonment.

6

sentence within a properly calculated Sentencing Guidelines range is not appealable," and noted that Defendant "identifie[d] no errors in the district court's sentencing calculations." *United States v. Foley*, 71 F. App'x 889, 891 (2d Cir. 2003).

## II. Conclusions of Law and Analysis.

### A. Whether to Stay the Case or Rule on the Merits.

On July 28, 2016, the government filed a motion requesting the court impose a stay until the Supreme Court's decision in *Beckles*. Defendant's anticipated release date from incarceration is April 7, 2020, and he argues in his competing motion to proceed on the merits that, in the absence of expedited treatment of his motion, he will be deprived of meaningful relief.

In *Blow v. United States*, 829 F.3d 170 (2d Cir. 2016), the Second Circuit instructed:

> The Supreme Court has held that *Johnson* announced a new rule of constitutional law that is retroactive on collateral review. Furthermore, the statutory language that was found unconstitutionally vague in *Johnson* is identical to the language in § 4B1.2(a)(2) now challenged by [the defendant].... The Supreme Court recently granted certiorari in another . . . case to determine, *inter alia*, the precise question at issue here—whether *Johnson* applies retroactively to § 4B1.2(a)(2)'s residual clause.... [B]ecause the Supreme Court will likely decide in *Beckles* whether *Johnson* applies retroactively to the Guidelines, the district court is instructed to hold [the defendant's] § 2255 motion in abeyance pending the outcome of *Beckles*. The district court is free to consider termination of the stay, on motion or sua sponte.

*Id.* at 172-73 (citations omitted). On March 6, 2017, the Supreme Court issued its decision in *Beckles*, wherein it held "that the advisory Guidelines are not subject to vagueness challenges under the Due Process Clause[.]" 137 S. Ct. at 890. As awaiting the outcome of *Beckles* was the basis of the government's motion for a stay of Defendant's § 2255 petition, the court DENIES AS MOOT the government's motion for a stay (Doc. 53) and GRANTS Defendant's request for a ruling on the merits (Doc. 57).

### B. Whether Defendant's § 2255 Petition was Timely Filed.

Defendant contends that his petition is timely under § 2255(f)(3) because it was filed within one year of the Supreme Court's decision in *Johnson*, which announced a

right newly recognized by the Supreme Court. The government responds that Defendant's petition is untimely because his conviction became final more than one year ago, and his claim is premature because the Supreme Court has not yet recognized the right to relief that he asserts.

> To be timely, a § 2255 petition must be filed within one year of the latest of:
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). When the Supreme Court recognizes a new right, "a federal prisoner seeking to assert that right will have one year from [the] Court's decision within which to file his § 2255 motion. He may take advantage of the date in the first clause of [§ 2255(f)(3)] only if the conditions in the second clause are met." *Dodd v. United States*, 545 U.S. 353, 358-59 (2005).

A right is newly recognized for purposes of § 2255(f)(3) if it is analogous to a "new rule." *See Teague v. Lane*, 489 U.S. 288 (1989). The *Teague* Court narrowly constrained the definition of a "new rule" to a legal conclusion which "breaks new ground or imposes a new obligation on the States or the Federal Government[,]" or a circumstance in which "the result was not dictated by precedent existing at the time the defendant's conviction became final." *Id.* at 301.

In *Johnson*, the Supreme Court held that "imposing an increased sentence under the residual clause of the [ACCA] violates the Constitution's guarantee of due process" because the ACCA's residual clause was unconstitutionally vague. 135 S. Ct. at 2563. *Welch* described the substantive right established by *Johnson* as specific to the ACCA and stated that *Johnson* "changed the substantive reach of the Armed Career Criminal

8

Act, altering the range of conduct or the class of person that the Act punishes." *Welch*,
136 S. Ct. at 1265 (internal quotation marks omitted). The Court also opined that
*Johnson* "cast no doubt" on laws using similar language. *Id.* at 1262. The Court
explicitly rejected the government's argument that *Johnson* placed other laws textually
similar to the ACCA into "constitutional doubt." *See Johnson*, 135 S. Ct. at 2561.

To date, the Supreme Court has not decided whether the residual clause of the
*mandatory* Guidelines is unconstitutionally vague. To the contrary, although the *Beckles*
Court concluded that "the advisory Guidelines are not subject to vagueness challenges
under the Due Process Clause," 137 S. Ct. at 890, the question of whether *Johnson*
applies to pre-*Booker* sentences remains unanswered. *Id.* at 903, n.4 (noting the majority
opinion "at least [left] open the question whether defendants sentenced to terms of
imprisonment before [the] decision in *United States v. Booker*[] . . . may mount
vagueness attacks on their sentences.") (Sotomayor, J., concurring); *see also Raybon v.
United States*, 867 F.3d 625, 629-30 (6th Cir. 2017) ("[W]hether [*Johnson*] applies to the
mandatory guidelines, which contain identical language as the ACCA provision at issue
in *Johnson*[], is an open question").[5] The application of *Johnson* to the residual clause of
the mandatory Guidelines, therefore, is not a "'right' that 'has been newly recognized by
the Supreme Court' let alone one that was 'made retroactively applicable to cases on
collateral review.'" *Id.* at 630 (quoting § 2255(f)(3)); *see also Bryant v. United States*,
2018 WL 1010212, at \*3 (S.D.N.Y. Feb. 20, 2018) ("The weight of post-*Beckles*
authority supports [the] conclusion" that the Supreme Court has not recognized such a
right under the mandatory guidelines).

---

[5] *See also United States v. Greer*, 2018 WL 721675, at \*5 (10th Cir. Feb. 6, 2018) ("[T]he only
right recognized . . . in *Johnson* was a defendant's right not to have his sentence increased under
the residual clause of the ACCA. The Court . . . has still not decided . . . whether the mandatory
Guidelines can be challenged for vagueness . . . let alone whether such a challenge would
prevail."); *United States v. Brown*, 868 F.3d 297, 303 (4th Cir. 2017) (concluding *Beckles* "made
clear that the right announced in *Johnson* did not automatically apply to all similarly worded
residual clauses."); *United States v. Colasanti*, 2017 WL 4273300, at \*4 (D. Or. Sept. 26, 2017)
(citing numerous other cases reaching same result); *but see Reid v. United States*, 252 F. Supp.
3d 63, 68 (D. Mass. 2017) (holding *Johnson* effectively invalidates the career offender residual
clause in the mandatory Guidelines).

Contrary to Defendant's assertion, the Supreme Court "has not extended the reasoning of *Johnson* to make mandatory guideline provisions subject to vagueness challenges or[] . . . declare[d] the residual clause in the mandatory career offender guideline unconstitutionally vague." *Bryant*, 2018 WL 1010212, at *3. Defendant's petition is thus premature and fails to satisfy the requirements of § 2255(f)(3). He does not allege that his motion satisfies any of the other subsections of § 2255(f). As a result, his petition to vacate his sentence is DISMISSED as untimely. 28 U.S.C. § 2255(f)(3).

## C. Whether the Mandatory Guidelines Are Unconstitutionally Vague.

Assuming *arguendo* that Defendant's petition was not untimely, it must be denied on its merits. The parties dispute whether *Johnson* applies to pre-*Booker* sentences based on § 4B1.2(a)(2)'s residual clause and renders the mandatory Guidelines void for vagueness. The Due Process Clause prohibits the government from "taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson*, 135 S. Ct. at 2556 (citing *Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983)). Applying that standard, the Supreme Court has invalidated two types of criminal laws as "void for vagueness": "laws that define criminal offenses and laws that fix the permissible sentences for criminal offenses." *Beckles*, 137 S. Ct. at 892. The "twin concerns underlying vagueness doctrine [are] providing notice and preventing arbitrary enforcement." *Id.* at 894.

"[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993). "[A] narrowing construction of an otherwise vague statute provides a person of ordinary intelligence fair notice of what is prohibited. And in the context of sentencing, a clarifying construction provides guidance to judges, thus preventing arbitrary or uneven enforcement." *United States v. Miller*, 868 F.3d 1182, 1188-89 (10th Cir. 2017).

The parties disagree as to whether it makes a difference whether the Guidelines are mandatory or advisory. At least one Circuit has concluded it does not:

> The Guidelines—whether mandatory or advisory—cannot be unconstitutionally vague because they do not establish the illegality of any conduct and are designed to assist and limit the discretion of the sentencing judge. The limitations the Guidelines place on a judge's discretion cannot violate a defendant's right to due process by reason of being vague. The Guidelines do not define illegal conduct: they are directives to judges for their guidance in sentencing convicted criminals, not to citizens at large. Due process does not mandate notice of where, within the statutory range, the guidelines sentence will fall.

*In re Griffin*, 823 F.3d 1350, 1354 (11th Cir. 2016) (citation omitted). Defendant nonetheless appears to have the better part of the argument by pointing out that prior to *Booker*, the mandatory Guidelines "[bound] judges and courts in the exercise of their uncontested responsibility to pass sentence in criminal cases[,]" *United States v. Mistretta*, 488 U.S. 361, 391 (1989), and "[had] the force and effect of laws." *Booker*, 543 U.S. at 234. As the *Booker* Court explained, "[i]n most cases, as a matter of law, . . . the judge [was] bound to impose a sentence within the Guidelines range." *Id.* As Defendant points out, because the mandatory Sentencing Guidelines had the force and effect of law, a number of district courts have concluded that *Beckles* does not foreclose a vagueness challenge under *Johnson*.[6]

---

[6] *See, e.g.*, *Reid v. United States*, 252 F. Supp. 3d 63, 68 (D. Mass. 2017) (holding "*Beckles* does not apply to pre-*Booker* sentences imposed under the mandatory Sentencing Guidelines" and observing "[t]he bulk of district court decisions handed down in the short time since *Beckles* have recognized the distinction between pre- and post-*Booker* sentences, at least theoretically and mainly in *dicta*."); *United States v. Parks*, 2017 WL 3732078, at *4 (D. Colo. Aug. 1, 2017) (granting § 2255 petition and "find[ing] that the *Beckles* decision and its rationale do not apply to the mandatory Guidelines and defendants[] . . . that were sentenced under such Guidelines" because *Beckles*'s "reasoning supports the conclusion that *Johnson* applies to mandatory Guidelines."); *United States v. Walker*, 2017 WL 3034445, at *3 (N.D. Ohio July 18, 2017) (concluding "*Beckles*[] . . . by its own terms does not apply to sentences imposed prior" to *Booker*); *Sarracino v. United States*, 2017 WL 3098262, at *3 (D.N.M. June 26, 2017) ("Considering *Johnson*, *Beckles*, and *Booker*, the [magistrate judge found] *Johnson* applies to the mandatory Guidelines."); *United States v. Costello*, 2017 WL 2666410, at *2 (S.D. Ohio June 21, 2017) (recommending the district court grant § 2255 petition because "the residual clause of the career offender [mandatory] Sentencing Guideline is unconstitutional on the same basis as *Johnson* . . . because *Beckles* applies only to the advisory Sentencing Guidelines after *Booker*");

11

The court need not decide this issue because the commentary to the career offender enhancement of the 2002 Guidelines, unlike the ACCA, expressly designated robbery and burglary of a dwelling as "'[c]rime[s] of violence[.]'" U.S.S.G. § 4B1.2(a)(2). Specifically, note 1 to § 4B1.2 explained that a "'[c]rime of violence' includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, *robbery*, arson, extortion, extortionate extension of credit, and *burglary of a dwelling*." U.S.S.G. § 4B1.2 cmt. n.1 (2002) (emphasis supplied). Because robbery and burglary were specifically listed as crimes of violence in § 4B1.2's commentary, the "unpredictability[,]" "arbitrariness[,]" and "hopeless indeterminacy" of the ACCA's residual clause are not present. *Johnson*, 135 S. Ct. at 2558. Instead, Defendant had "fair notice" that he could be subjected to a career offender enhancement, and that provision did not invite "arbitrary enforcement" with respect to him. *See Beckles*, 137 S. Ct. at 897 n* (Ginsburg, J., concurring) ("This Court has routinely rejected, in a variety of contexts, vagueness claims where a clarifying construction rendered an otherwise enigmatic provision clear as applied to the challenger."); *see also id.* at 898 (Sotomayor, J., concurring) ("*Johnson* affords Beckles no relief, because the commentary under which he was sentenced was not unconstitutionally vague."); *United States v. Taylor*, 2018 WL 992290, at *4 (10th Cir. Feb. 21, 2018) (dismissing § 2255 petition where conduct underlying defendant's pre-*Booker* Guidelines career offender sentence "was clearly proscribed by the authoritative commentary to the guideline," and therefore "his sentence [did] not violate due process and his § 2255 motion fails on the merits").[7]

---

*United States v. Tunstall*, 2017 WL 1881458, at *6 (S.D. Ohio May 9, 2017) ("On its face *Beckles* applies only to the advisory, post-*Booker*, Guidelines[,]" and as a result "the Magistrate Judge concludes the residual clause of the mandatory Guidelines under which [defendant] was sentenced is unconstitutionally vague.").

[7] In *Beckles*, although concurring with the outcome, Justices Ginsburg and Sotomayor would have rejected the defendant's vagueness challenge based on the enumeration of his offense of prior conviction in § 4B1.2(a)'s commentary rather than issuing the majority's broader holding that the advisory Guidelines were immune from vagueness challenges. Justice Ginsburg reasoned the case had a "simple solution" because the commentary to the Guidelines clearly proscribed Mr. Beckles's conduct, and as such he could not "claim that § 4B1.2(a) was vague as applied to him." 137 S. Ct. at 897-98 (Ginsburg, J., concurring). Nor could he "complain of the

12

Assuming *arguendo* that the residual clause in § 4B1.2(a) may otherwise be unconstitutionally vague, the enumeration of burglary of a dwelling and robbery renders the career offender enhancement's application to Defendant sufficiently clear affording Defendant fair notice of the possibility of greater punishment. *See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 500 (1982) (concluding defendant's facial challenge to a "quasi-criminal" ordinance failed "because, under the test appropriate to either a quasi-criminal or a criminal law, the ordinance [was] sufficiently clear as applied to" the defendant). Similarly, "there was no risk of arbitrary enforcement by judges" because "in the context of sentencing, a clarifying construction provides guidance to judges, thus preventing arbitrary or uneven enforcement." *Miller*, 868 F.3d at 1189. As a result, the career offender Guideline enhancement was not unconstitutionally vague as applied in Defendant's case.[8]

### D. Whether Defendant's Connecticut Robbery Convictions Constitute Crimes of Violence under § 4B1.2.

Relying on the Second Circuit's opinion in *United States v. Jones*, 830 F.3d 142 (2d Cir. 2016) ("*Jones I*"), *vacated and withdrawn*, 838 F.3d 296 (2d Cir. 2016), Defendant argues that his convictions for first degree robbery and third degree burglary do not qualify as crimes of violence within the meaning of § 4B1.2 of the mandatory Guidelines. Although the government appears to concede that Defendant's "burglary convictions may no longer qualify as career offender predicate offenses," it nevertheless argues that his first degree robbery convictions categorically constitute crimes of violence. (Doc. 58 at 5.)

---

vagueness of the [guideline] as applied to the conduct of others." *Id.* at 898 (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18-19 (2010)). Justice Sotomayor noted that "the commentary under which [the defendant] was sentenced was not unconstitutionally vague," and accordingly *Johnson* did not invalidate his sentence. *Id.* (Sotomayor, J., concurring).

[8] The court does not address Defendant's further argument that the commentary does not survive *Johnson* and could not apply at resentencing. *See United States v. Rollins*, 836 F.3d 737, 742-43 (7th Cir. 2016) (en banc) (observing that "the First Circuit has recently rejected the government's argument that the note independently supports application of the career-offender enhancement. We think that court has it exactly right.") (citation omitted).

Courts employ two methods when determining whether a state conviction qualifies as a predicate offense for a federal sentence enhancement: the categorical approach and the modified categorical approach. *See Descamps v. United States*, 570 U.S. 254, 257 (2013). Under the categorical approach, the court examines only the legal elements of the state criminal statute to determine whether they are identical to or narrower than the definition of a crime of violence. *See id.* If that question is answered in the affirmative, a state conviction categorically qualifies as a predicate offense for the career offender enhancement. *See id.* If, however, the state statute criminalizes conduct that does not fall within the scope of a crime of violence, a conviction under the state statute is not categorically a crime of violence and cannot serve as a predicate offense. *See id.*

The Second Circuit has cautioned that, "[u]nder the categorical approach [a court] must confine [its] inquiry to the legal elements of the state statute without at all considering the facts of the underlying crime." *United States v. Jones*, 878 F.3d 10, 16 (2d Cir. 2017) ("*Jones II*"). The Supreme Court enunciated two reasons for the limited nature of the inquiry. First, the text of the career offender enhancement in the Guidelines, like that of the ACCA, explicitly refers to convictions rather than conduct. *See Mathis v. United States*, 136 S. Ct. 2243, 2252 (2016). The Guidelines direct the sentencing court to consider whether the offender "has at least two prior felony convictions of . . . a crime of violence[.]" U.S.S.G. § 4B1.1(a). "[T]he sentencer should ask only about whether the defendant had been convicted of crimes falling within certain categories, and not about what the defendant had actually done." *Mathis*, 136 S. Ct. at 2252 (internal quotation marks and citation omitted). Second, the sentencing court "avoids unfairness to defendants" by focusing on the legal elements, rather than the facts of the offense. *Id.* at 2253. "Statements of 'non-elemental fact' in the records of prior convictions [such as the manner in which the defendant committed the offense] are prone to error precisely because their proof is unnecessary." *Id.*

Where a state statute criminalizes multiple acts in the alternative and is therefore "'divisible'" into separate crimes, courts employ the modified categorical approach. *Descamps*, 570 U.S. at 257; *see also Flores v. Holder*, 779 F.3d 159, 165 (2d Cir. 2015)

14

("If[] . . . the state criminal statute is 'divisible,' we apply a 'modified categorical approach' to determine whether a given conviction constitutes an aggravated felony."). A statute is divisible if it "list[s] elements in the alternative, and thereby define[s] multiple crimes" but is not divisible if it instead lists "various factual means of committing a single element." *Mathis*, 136 S. Ct. at 2249.

Pursuant to *Shepard v. United States*, 544 U.S. 13 (2005), a court utilizing the modified categorical approach may examine "a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Mathis*, 136 S. Ct. at 2249 (listing *Shepard*-approved documents). "The court can then compare that crime, as the categorical approach commands, with the relevant generic offense." *Id.* Where insufficient records are available, the court looks to "'the least of [the] acts' proscribed by the statute to see if it qualifies as a predicate offense for the career offender enhancement." *Jones II*, 878 F.3d at 17 (quoting *Johnson v. United States*, 559 U.S. 133, 137 (2010)).

Defendant contends that, although *Jones I* was withdrawn pending *Beckles*, its "analysis of whether New York robbery will qualify as a crime of violence under the force clause is still persuasive authority[.]" (Doc. 62 at 14.) In *Jones I*, "the government conceded that the residual clause [of the Guidelines] was void for vagueness[.]" *Jones II*, 878 F.3d at 14. As a result, the Second Circuit's analysis "centered upon the force clause of the Career Offender Guideline" and "concluded that the force clause could not be applied to Jones[.]" *Id.* The court did not address the residual clause in *Jones I*.

Guided by *Beckles*, the *Jones II* court considered whether first degree robbery in New York categorically qualifies as a crime of violence under the residual clause of the Guidelines' career offender enhancement. The Second Circuit concluded the New York statute is divisible and therefore subject to the modified categorical approach. *Id.* at 16-17. After determining that forcibly stealing property while armed with a deadly weapon was the "least of the acts" proscribed by the statute, the court had "little difficulty" concluding a first degree robbery conviction in New York qualifies as a crime of violence

under the career offender enhancement because "[p]lainly, a robber who forcibly steals property from a person or from his immediate vicinity, while armed with a deadly weapon, engages in 'conduct that presents a serious potential risk of physical injury to another.'" *Id.* (quoting U.S.S.G. § 4.B1.2(a)(2)).

Connecticut law defines robbery as follows:

A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) [p]reventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny.

Conn. Gen. Stat. § 53a-133. A defendant commits first degree robbery in Connecticut:

when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime: (1) [c]auses serious physical injury to any person who is not a participant in the crime; or (2) is armed with a deadly weapon; or (3) uses or threatens the use of a dangerous instrument; or (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm, except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged.

Conn. Gen. Stat. § 53a-134(a).

Connecticut's first degree robbery statute is divisible and therefore subject to the modified categorical approach. *See Jones II*, 878 F.3d at 16-17 (concluding similarly worded New York statute was divisible); *see also United States v. Bordeaux*, 2018 WL 1473693, at *2 (2d Cir. Mar. 27, 2018) (""The Connecticut first-degree-robbery statute[] . . . lists alternative ways to commit the offense, enumerated in four paragraphs"). The government has not provided any *Shepard*-approved documents from which the court may ascertain which statutory phrase was the basis for each of Defendant's first degree robbery convictions. The court therefore looks to "the least of the acts" proscribed by the statute to see if it qualifies as a predicate offense for the career offender enhancement. In *Jones II*, the Second Circuit determined that the act of

16

"forcibly stealing property" while "armed with a deadly weapon" constituted the "least of the acts" in similarly worded New York first degree robbery statute. 878 F.3d at 17. Correspondingly, under Connecticut law, "us[ing] or threaten[ing] the immediate use of physical force upon another person" while "in the course of committing a larceny" and "armed with a deadly weapon" constitutes the "least of the acts" proscribed by Conn. Gen. Stat. §§ 53a-133, 53a-134(a). *See Bordeaux*, 2018 WL 1473693, at *3 ("[E]ven a mere threat to use a firearm that one does not in fact have still qualifies as the 'threatened use of physical force' within the meaning of ACCA."). For this reason, in Connecticut, "a robber who forcibly steals property from a person or from his immediate vicinity, while armed with a deadly weapon, engages in 'conduct that presents a serious potential risk of physical injury to another.'" *Jones II*, 878 F.3d at 17.[9] In addition, Connecticut's definition of first degree robbery falls within the scope of generic robbery as set forth in the commentary to U.S.S.G. § 4B1.2(a).

Because Defendant's argument that first degree robbery is not necessarily a "crime of violence" within the meaning of U.S.S.G. § 4B1.2(a) under the categorical approach is without merit, he cannot prevail on his § 2255 petition.

## E. Whether Defendant's Petition is Barred by Procedural Default.

Finally, Defendant did not assert a vagueness challenge to his career offender status at sentencing or on direct appeal. He has therefore procedurally defaulted on this challenge in the absence of "(1) good cause to excuse the default and ensuing prejudice, or (2) actual innocence[.]" *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012).

As the government observes, Defendant thus far has established neither actual innocence nor good cause for failing to assert a vagueness challenge at sentencing or on

---

[9] *See generally United States v. Bordeaux*, 2018 WL 1473693, at *3 (2d Cir. Mar. 27, 2018) ("Comparing the conduct that constitutes first-degree robbery under [Connecticut law] with the conduct that constitutes a violent felony under ACCA, we conclude that first-degree-robbery as defined in Connecticut General Statutes section 53a-134(a)(4) qualifies as a violent felony within the meaning of ACCA. The first-degree-robbery statute satisfies both requirements of ACCA's elements clause: intent and violent force.").

17

direct appeal. *See Bousley v. United States*, 523 U.S. 614, 623 (1998) ("'[A]ctual innocence' means factual innocence," and "'futility cannot constitute [good] cause if it means simply that a claim was unacceptable to that particular court at that particular time.'") (internal quotation marks omitted). The court need not, however, decide this issue in light of its dismissal of Defendant's § 2255 petition on other grounds.

## CONCLUSION

For the foregoing reasons, the court DENIES AS MOOT the government's motion to stay Defendant's § 2255 petition (Doc. 53), GRANTS Defendant's request for a ruling on the merits of the petition (Doc. 57), and DISMISSES AS UNTIMELY Defendant's § 2255 request for a reduced sentence. (Doc. 51.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this _30th_ day of March, 2018.

Christina Reiss, District Judge
United States District Court